IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LA TOYA M. CRUZ, <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF NEBRASKA, and THE STATE OF NEBRASKA, ACTING THROUGH THE NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendants. | 4:19-CV-3042 <br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motion for Summary Judgment. Filing 26. Plaintiff, La Toya Cruz, brings this suit alleging her former employer and Defendant, the Nebraska Department of Health and Human Services ("DHHS"), violated her rights under state and federal law by failing to accommodate her medical needs and discriminating against her because of her race and color. Filing 1-1. Cruz did not respond to Defendants' Motion for Summary Judgment, and the Court finds no evidence in the record to support her claims. Defendants' Motion for Summary Judgment is granted.

**I. BACKGROUND**

Cruz began working as a service coordinator for DHHS in 2013. Filing 1-1 at 2; Filing 27 at 2. On January 23, 2017, Cruz's direct supervisor, Kristie Christianson, informally counseled Cruz about her job performance. Filing 28-6; Filing 28-1 at 2. Christianson observed Cruz "spending a large portion of her time at work talking about events that occurred outside of the workplace which lead to gossiping and rumors concerning other DHHS employees." Filing 28-1 at 2. Christianson counseled Cruz after Cruz questioned Christianson's motive "in an elevated voice" and what Christianson "deemed an inappropriate manner." Filing 28-1 at 2. During the

1

informal counseling session, Cruz indicated to Christianson that a supervisor outside of Cruz's chain of supervision, Jackie Langan, was engaging in inappropriate behavior by discussing a sexual relationship with another employee, and Cruz felt threatened. Filing 28-1 at 2-3; Filing 28-2 at 2. Christianson reported these allegations to her supervisor, Jillion Lieske, who reported them to human resources on the same day. Filing 28-1 at 3; Filing 28-2 at 2. Human resources began an investigation on January 24. Filing 28-2 at 2. Human resources found Cruz's allegations of sexual harassment to be unsubstantiated. Filing 28-2 at 2. However, Langan was disciplined for failing to report matters to her supervisor and discussing the investigation with other employees. Filing 28-2 at 2. Cruz also filed a complaint with the Nebraska Equal Opportunity Commission ("NEOC") in February 2017. Filing 27 at 15. Cruz was never subjected to any formal discipline. Filing 28-1 at 3; Filing 28-2 at 3; Filing 28-10 at 2.

On March 16, 2017, Cruz requested a twelve-week leave of absence due to a serious heart condition, on the advice of her physician. Filing 28-9 at 1-6. DHHS granted her a six-week leave of absence and told her to contact the department if she was unable to return to work on May 2, 2017. Filing 28-9 at 8. In late April, Cruz's physician requested her leave be extended by another three weeks for medical reasons. Filing 28-9 at 21-22. Cruz's leave of absence was extended, allowing her to return on May 16, 2017. Filing 28-9 at 31. While granting this extension, DHHS requested follow-up information regarding the duration of Cruz's planned alternative work schedule. Filing 28-9 at 31. Cruz was then approved for an alternative work schedule, working no more than five hours per day through June 12, 2017. Filing 28-9 at 45. Thereafter, she sought and was granted approval to work six hours per day through September 23, 2017. Filing 28-9 at 58.

On October 10, 2017, Cruz was hospitalized again. Filing 28-9 at 77. Pursuant to her doctor's advice, Cruz requested and was approved for leave under the Family Medical Leave Act

2

("FMLA") to allow her to work a four-hour per day schedule with allowances for flare ups of her condition and necessary medical appointments. Filing 28-9 at 78-79. She had previously used FMLA leave from July 13, 2016 to October 3, 2016, and from March 7, 2015, to May 11, 2015. Filing 28-10 at 2. Her FMLA leave request was updated and approved later in October 2017 following an updated certification from her doctor, resulting in a reduced schedule of four hours per day, three to four days per week. Filing 28-9 at 100. DHHS approved this schedule through June 16, 2018. Filing 28-9 at 100. On April 30, 2020, Cruz submitted two-week notice of her intent to resign. Filing 28-8; *see also* Filing 28-1 at 3-4.

Cruz filed the present complaint in state court on October 29, 2018, alleging violations of Title VII of the Civil Rights Act of 1964 and the parallel Nebraska Fair Employment Practices Act ("NFEPA"), the Americans with Disabilities Act of 1990 ("ADA"), and the FMLA.[1] Filing 1-1 at 1. The case was removed to this Court on May 10, 2019. Filing 1. Defendants filed the present motion for summary judgment on September 9, 2020. Filing 27. Cruz has not responded to the present motion, and the time for doing so has passed. *See* NECivR 7(b)(1)(B) ("A brief opposing a motion . . . for summary judgment must be filed and served within 21 days after the motion and supporting brief are filed and served."); *see also* NECivR 7(b)(1)(C) ("Failure to file an opposing brief . . . precludes the opposing party from contesting the moving party's statement of facts.").[2] The Court now addresses and grants Defendants' Motion for Summary Judgment based on the evidence it has before it.

---

[1] Cruz also asserts violations of Neb. Rev. Stat. § 20-148, which generally provides civil remedies for violations of constitutional or statutory rights. Thus, this claim is dependent upon Cruz being successful as to her other claims.

[2] The Court also notes Cruz failed to timely respond to Defendants' requests for admissions under Federal Rule of Civil Procedure 36. On April 8, 2020, Cruz was served through her attorney with requests for admissions. Filing 21. Defendants received Cruz's response August 18, 2020. Filing 27 at 2 n.1. Defendants served a second set of requested admissions on June 25, 2020. Filing 23. Cruz did not respond until September 9, 2020. Filing 27 at 2 n.1. Absent a court order or the parties' stipulation otherwise, a party has thirty days to respond to a request for admissions or else the matters are deemed admitted. Fed. R. Civ. P. 36(a)(3).

## II. ANALYSIS

### A. Legal Standard

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. Of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Title VII of the Civil Rights Act and NFEPA

Cruz alleges DHHS violated her rights under Title VII and NFEPA by discriminating against her because of her race, color, and participation in protected activities such as reporting Langan's harassing behavior and filing a complaint with the NEOC. Filing 1-1 at 5. She further alleges this discrimination took the form of increased job scrutiny and retaliatory behavior, constituting adverse employment action, and the denial of her requested reasonable accommodations. Filing 1-1 at 5. Defendants deny Cruz's allegations. *See generally* Filing 4; Filing 27.

Under Title VII of the Civil Rights Act and NFEPA, it is illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); Neb. Rev. Stat. § 48-1104(1). Nebraska courts interpreting NFEPA inform their analysis by looking to federal

courts' interpretations of Title VII. *Airport Inn, Inc., v. Neb. Equal Opportunity Comm'n*, 217 Neb. 852, 856, 353 N.W.2d 727, 731 (1984) ("Because the NFEPA is patterned from that part of the Civil Rights Act of 1964 contained in 42 U.S.C. §§ 2000e et seq. (1976), it is appropriate to look to federal court decisions construing similar and parent federal legislation."). "To survive a motion for summary judgment with a Title VII claim, a plaintiff must show either direct evidence of a Title VII violation or create an inference of discrimination or retaliation under the *McDonnell Douglas* burden-shifting framework." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).

*1. Lack of Direct Evidence of Discrimination or Retaliation*

Cruz presents no direct evidence of discrimination or retaliation. "Direct evidence of discrimination requires 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Shirrell*, 793 F.3d at 887 (alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)). Similarly, "[d]irect evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse-action was in retaliation for the protected conduct." *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014) (citation omitted). Cruz offers no evidence of statements or conduct indicating racial animosity nor of any adverse event related to her race, color, or the allegations she levied. DHHS offers evidence indicating Cruz was informally counseled for gossiping once in 2017, before she made any allegations against Langan or filed a complaint with the NEOC, and that she was subjected to no other form of discipline. *See* Filing 28-1; 28-6. The record before the Court indicates DHHS's only response to Cruz's allegations was to promptly investigate the

6

matter; there is nothing else related to Cruz's race, color, or the allegations in the record. *See* Filing 28-2 at 2; Filing 28-9. The Court cannot find in the evidence before it any indicia of animus based on race, color, or Cruz's protected activity, let alone a "specific link" between such animus and decisions DHHS made with regard to Cruz. Thus, there is no direct evidence to support her claims.

    *2. No Prima Facie Case of Discrimination or Retaliation*

Without direct evidence, Cruz must make a prima facie showing of discrimination or retaliation for her claim to survive summary judgment. *Shirrell*, 793 F.3d at 887. Under the applicable *McDonnell Douglas* framework, to demonstrate a prima facie case of discrimination, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye Nu Aire, Inc.*, 641 F.3d 1011, 1119 (8th Cir. 2011). Similarly, a plaintiff presents a prima facie case of retaliation by demonstrating that "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 880 (8th Cir. 2014) (quoting *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 720 (8th Cir. 2006)). Defendants argue Cruz fails to meet her burden because she puts forth no evidence of an adverse employment action. Filing 27 at 13-16. The Court agrees.

An adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jones v. City of St. Louis, Mo.*, 825 F.3d 476, 480 (8th Cir. 2016) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804-05 (8th Cir. 2013)). Cruz alleges but presents no evidence of any adverse employment action. *See*

7

*generally* Filing 1-1; Filing 28-5; Filing 28-11. She alleges in her Complaint that she was terminated, but the evidence before the Court indicates only that she resigned. *Compare* Filing 1-1 at 4 (stating Cruz was terminated by DHHS), *with* Filing 28-8 (Cruz's e-mail giving notice of her resignation). The unrefuted evidence before the Court is that Cruz was never subjected to any formal discipline from 2017 until she resigned. *E.g.*, Filing 28-1 ("Ms. Cruz was never subject to any formal discipline from 2017 to the date of today's declaration."). Her single documented instance of informal counseling for gossiping had no evident effect on her duties, pay, or career prospects, so it presented no "materially significant disadvantage." *See Jackman*, 728 F.3d at 804 ("[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action."); *see also Carpenter v. Nw. Airlines, Inc.*, 47 Fed. Appx. 424, 426 (8th Cir. 2002) ("[Defendant's] critique of [Plaintiff's] poor job performance was neither an adverse employment action, nor did it affect a term, condition, or privilege of employment."). Cruz's benefits were also not impacted. Cruz's initial twelve-week request for a leave of absence was granted for only six weeks but then extended as needed. Filing 28-9 at 8, 31. All of Cruz's other leave requests were granted as requested. *See generally* Filing 28-9. She alleges similarly situated white employees were subjected to less scrutiny when requesting leave but offers no evidence to the effect. *See* Filing 1-1 at 4. The Court finds no evidence of any adverse employment action taken against Cruz. Therefore, Cruz has not made the requisite prima facie showing of discrimination or retaliation.

### C. ADA

Cruz next alleges that by granting only six of her initially requested twelve weeks of leave, DHHS "failed to enter into interactive discussion . . . as to reasonable accommodation of her limitations due to her disability in violation of the ADA . . . ." Filing 1-1 at 6. Defendants assert

8

that there was no violation of the ADA because DHHS made reasonable accommodations for Cruz's medical needs. Filing 27 at 16-17. The Court agrees that DHHS reasonably accommodated Cruz.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Under the ADA, an employer unlawfully discriminates if it fails to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999) (alteration in original) (quoting 42 U.S.C. § 12112(b)(5)(A)). An employer fails to engage in an interactive process with an known-disabled employee who requests accommodation when "the employer [does] not make a good faith effort to assist the employee in seeking accommodations" and "the employee could have been reasonably accommodated but for the employer's lack of good faith." *Fjellestad*, 188 F.3d at 952 (quoting *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 165 (3rd Cir. 1999)).

Cruz argues that because DHHS granted her only a six-week leave of absence rather than her initially requested twelve weeks, it failed to make reasonable accommodations. *See* Filing 1-1 at 6. The Court does not read the ADA to require an employer to provide the precise accommodation requested, however. The evidence before the Court would not allow a reasonable fact finder to conclude there was a lack of *reasonable* accommodations. Defendants provide ample evidence that each of Cruz's subsequent requests for leave and alternative work schedules were granted as requested. *See generally* Filing 28-9. It is true that her initial request was approved for only six weeks, and not the twelve she requested, but Cruz was also told to contact her employer

9

if she was unable to return in six weeks. Filing 28-9 at 8. When Cruz did so, her leave was extended as needed. Filing 28-9 at 31. She returned to work only after DHHS received approval from her doctor, and DHHS placed her on an alternative schedule of reduced hours to accommodate her heart condition. *See* Filing 28-9 at 43, 45. The record also reveals ongoing communication between Cruz, her supervisors, and human resource personnel discussing her needs and arranging accommodations. *See, e.g.*, Filing 28-9 at 73-74 (e-mails between Cruz and Christianson clarifying her needs and schedule). The evidence before the Court leaves no question that DHHS remained engaged in an interactive process with Cruz to address her medical needs and made reasonable accommodations as a result. Therefore, there was no violation of Cruz's rights under the ADA.

### D. FMLA

Finally, Cruz alleges Defendants violated the FMLA by denying her twelve weeks of leave "as medically required." Filing 1-1 at 7. Defendants note all of Cruz's FMLA leave requests were approved and argue she presents no evidence of retaliation. Filing 27 at 17-18. Defendants are correct.

The FMLA is designed to protect jobs for those who must miss work due to illness or the medical needs of family members. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). An eligible employee with "a serious health condition that makes the employee unable to perform the functions of the position of such employee," is entitled to as many as twelve workweeks of unpaid leave during any twelve-month period under the FMLA. 29 U.S.C. § 2612(a)(1)(D). Two types of claims are possible under the FMLA: "(1) 'interference' or '(a) (1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that

the employer discriminated against him for exercising his FMLA rights." *Stallings*, 447 F.3d at 1050 (citing 29 U.S.C. § 2615(a)(1)-(2)).

    *1. No Interference*

An employer interferes with an employee's exercise of FMLA rights both by wrongfully refusing to grant FMLA leave and by discouraging an employee from taking it. *Id.* "In an interference claim, an 'employee must show only that he or she was entitled to the benefit denied.'" *Id.* (quoting *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003)). Cruz has not put forth evidence to show that she was entitled to twelve weeks FMLA leave when she initially requested twelve weeks off, nor does she offer anything that would allow a reasonable fact finder to conclude she was denied leave under the FMLA. By her own admission in an e-mail she sent to human resources, Cruz was not entitled to FMLA leave when her heart condition was first diagnosed because she had already used her entitlement for the year. *See* Filing 28-9 at 69 ("I was unable to use FMLA due to a double mastectomy in July 2016 that cause[sic] me to use all my FMLA."). When a year had passed since her last use of leave and Cruz was again eligible, she requested FMLA leave to support her alternative working schedule, and DHHS granted her request. Filing 28-9 at 80. Cruz has submitted no evidence indicating anyone tried to convince her not to use FMLA leave. To the contrary, Defendants' proffered evidence makes it clear human resource personnel advised Cruz of her FMLA rights and even reminded her to submit her request. *See* Filing 28-9 at 75 (human resource analyst email detailing efforts to get Cruz to submit FMLA request). Therefore, the Court finds there is no evidence to support a finding that Defendants interfered with Cruz's exercise of her FMLA rights.

    *2. No Retaliation*

"To establish a prima facie case of retaliation, [a plaintiff] must show that she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). As discussed above in relation to Cruz's claims for alleged violations of the Civil Rights Act and NFEPA, nothing in the record would allow a reasonable fact finder to conclude Cruz suffered an adverse employment action. Absent evidence of an adverse employment action, there is no genuine question of material fact as to whether Cruz was retaliated against for exercising her FMLA rights, and summary judgment is appropriate.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, Filing 26, is granted.

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment (Filing 26) is granted;

2. This case is terminated; and

3. A separate judgment will be entered.

Dated this 20th day of November, 2020.

BY THE COURT:

Brian C. Buescher
United States District Judge